**R. E. HARRINGTON, INCORPORATED, (Plaintiff) Respondent,**

v.

**James E. FRICK and Allen R. Shoults, (Defendants) Appellants.**

No. 32969.

St. Louis Court of Appeals.

Missouri.

May 21, 1968.

Sullivan & Joyce, Dennis J. Tuchler, St. Louis, Attorneys, for defendants-appellants.

Coburn, Croft, Kohn & Herzog, St. Louis, Attorneys, for plaintiff-respondent.

DOUGLAS W. GREENE, Special Judge.

Plaintiff filed suit against defendants asking for an injunction and for damages for the alleged breach of provisions of employment contracts between plaintiff and defendants. After hearing evidence, the trial court, on March 2, 1967, entered judgment for plaintiff and against defendants as follows:

## "DECREE"

"IT IS HEREBY ORDERED AND DECREED: That defendants and each of them are hereby permanently enjoined from:

"(a) For a period of three (3) years from and after June 14, 1966, soliciting away from plaintiff any of plaintiff's customers known to any of defendants to be such and who were such on June 14, 1966, with intent to divert, take away or attempt to divert or take away, or solicit any of the clients of the plaintiff in the business of consultation services in unemployment compensation or workmen's compensation.

"(b) For a period of three (3) years commencing June 14, 1966, making any statements to any of plaintiff's customers known to any of defendants to be such and who were such on June 14, 1966, with the intent of for the purpose or with the effect of directly or indirectly diverting or taking away any of said customers from plaintiff.

"(c) Making any statements to any customer of plaintiff's in any way, directly or indirectly, derogatory, damaging or detrimental to plaintiff or disparaging to the value of plaintiff's service to its customers.

"(d) For a period of three (3) years commencing June 14th, 1966, acting to solicit for defendants or either of them or any other person or corporation, any of plaintiff's customers known to any of defendants to be such and who were such on June 14th, 1966, with intent to divert or take away the business of the plaintiff of consultation services in unemployment compensation or workmen's compensation.

"(e) For a period of three (3) years after June 14, 1966, engaging in or becoming interested directly or indirectly, as an individual, partner, stockholder, director, officer, agent, employee, trustee, or in any other relation or capacity whatsoever in and to the business of consultation services in unemployment compensation or workmen's compensation within the States of Ohio, Missouri, or Texas.

"IT IS FURTHER ORDERED AND DECREED that plaintiff recover its costs from defendants and each of them."

Defendants' motion for judgment, or a new trial, was overruled, and they appeal.

■ On appeal, we review this case de novo. However, we should not set aside the judgment unless it is clearly erroneous. Farmers Underwriters Association v. Reid, Mo.App., 425 S.W.2d 247, 1. c. 251.

The facts are as follows:

Plaintiff is a corporation organized and existing under the laws of the State of Ohio. Its principal place of business is Columbus, Ohio. It also has places of business in St. Louis, Missouri, and in Dallas, Texas, and is licensed and authorized to do business in Ohio, Missouri, and Texas. Plaintiff is in the business of furnishing unemployment compensation cost control services to its customers. It solicits customers throughout the United States and has on file with the appropriate state unemployment compensation commissions letters of authority giving it the power to act on behalf of its particular customers in certain matters in forty-nine states and the District of Columbia. Plaintiff has customers whose home offices are located in nineteen different states. It has approximately 2,000 customers, 1,000 of which are located in Missouri, 800 in Ohio, 100 in Texas, and the rest are scattered throughout sixteen other states. Plaintiff performs its services and business functions in its offices in Columbus, St. Louis, and Dallas, except that it solicits customers throughout the United States. It also makes some service calls at the home offices of its customers.

Defendant James E. Frick is a former employee of plaintiff. He was closely associated with plaintiff and with its predecessor, Holloway Marx, Inc., as a stockholder, officer, and director since early 1961. From July, 1963, until March, 1966, he was executive vice-president of plaintiff, and from March, 1966, until June 14, 1966, he was vice-president. From May, 1965, until May, 1966, he was in charge of sales on a nation wide basis. He was a member of the board of directors from April, 1963, until March, 1966. He is presently, and has been for several years, a shareholder of plaintiff. For almost all of the time of his employment he was in charge of plaintiff's entire operations in Missouri and Texas. His duties included the soliciting and servicing of customers in Missouri and Texas. On many occasions he attended board meetings, business meetings, and seminars in Ohio, and he was intimately acquainted with all of the operations and practices of plaintiff. On June 14, 1966, he was dismissed by the board of directors of plaintiff. Frick had access to the confidential files of the company, including copies of all contracts plaintiff had with its customers. At the time of his discharge, the customer contracts mysteriously disappeared. Only Frick and his secretary had keys to the cabinet where the contracts were kept.

Defendant Allen R. Shoults was employed by plaintiff in July, 1962. He was hired by Frick. Shoults was elected as vice-president of plaintiff and remained as such until March, 1966. He had responsibilities in both sales and service. Shoults was Frick's assistant and had charge of the day-to-day operations of the company for which Frick was responsible. He was discharged on June 15, 1966.

In April, 1965, plaintiff's management, as a matter of policy, requested all of plaintiff's officers and employees who wished to continue their status as such to

sign an agreement, a copy of which was introduced into evidence by stipulation. Frick and Shoults signed the agreement on April 24th and April 25th, 1965, respectively, in St. Louis, Missouri. The agreement generally provides that the defendants will not engage in or become interested directly or indirectly in the business of consultation services in unemployment compensation and workmen's compensation within any state in which plaintiff was engaged in business at the time of termination of employment, and that defendants would not, in any way, directly or indirectly, attempt to divert, take away or solicit any of the customers of plaintiff. The agreement was to remain in effect for a period of three years after the employee left the service of plaintiff.

Beginning some time before June 14, 1966, defendants entered into a scheme to go into a business to compete with plaintiff. The name of the business was to be "United Tax Service, Inc." They reserved the corporate name with the Secretary of State, ordered stationery, business forms, calling cards, and established an office in the same building where plaintiff's office was located in St. Louis, Missouri. The defendants did so for the purpose of and with the intention of competing with plaintiff in the unemployment compensation consulting service field within the State of Missouri.

From January, 1966, to May, 1966, defendants' sales dropped from an individual high of $8700.00 per month to a low of zero. They solicited plaintiff's employees Mary Wette and Jim Scott, to quit their jobs with plaintiff and go to work for defendants. After their discharge, Frick and Shoults immediately embarked upon a campaign to discredit plaintiff with its customers and to solicit them for United Tax Service. Frick contacted at least thirty-six customers of plaintiff, and Shoults contacted at least fifteen. The customers were told that Frick had been "double-crossed" by plaintiff and that Frick had been pushed out at a "rump" stockholder's meeting. The customers were also told that they did not need the services provided by plaintiff. Defendants' purpose of contacting plaintiff's customers was not only to solicit their business, but to try and get them to cancel their contracts with plaintiff. Frick admitted that one of his purposes was to "get even" with plaintiff. Twenty-three of the customers contacted by defendants cancelled their contracts, with a loss to plaintiff of $32,066.48, which was far in excess of normal sales losses plaintiff had experienced in prior years.

The trial court found as a fact, and we agree, that plaintiff had been injured and damaged in its business as a result of the statements, solicitations, and activities of defendants as outlined above, which they continued until halted by a temporary restraining order. For the most part, the business forms and methods used by plaintiff in the operation of its business were not trade secrets but were in common use and practice. The details of the data received from the customer and its relation to the proper rate chargeable by the state as computed by plaintiff is a process that was not known and understood by defendants.

Defendants raise only two points on appeal. The first is that the trial court erred in enforcing a restrictive covenant which was geographically broader in its prohibition against competition than was necessary for the protection of the employer's legitimate interests. Defendants specifically complain of the inclusion of the State of Ohio in the area of prohibited activity. Defendants' second point is that the trial court could not, under the law, sever, or enforce in part, the restrictive covenant in question by limiting relief only to that part of the covenant which would have been reasonable had the covenant been so limited originally.

Defendants concede in their argument that restraints on competition may be reasonably necessary to protect the employer's legitimate interest against unfair use of advantages acquired by the employee in the course of his employment. They also concede that such an unfair advantage could be gained through contact with employer's customers, whereby the employee might gain such influence over them as to be able to divert them from the employer or that through the use of trade secrets learned from employer, he might compete unfairly against the employer through the use of those secrets.

There are no trade secrets involved in this case, and the trial court so held. We therefore pass to defendants' contention that the area restriction (Missouri, Texas, and Ohio) was broader than necessary to protect the interest of employer against misuse of customer contacts, and is therefore unreasonable.

■ The question of reasonableness of a restraint is to be determined according to the facts of the particular case and hence requires a thorough consideration of all surrounding circumstances, including the subject matter of the contract, the purpose to be served, the situation of the parties, the extent of the restraint, and the specialization of the business. Such surrounding circumstances can only be properly investigated upon the production of evidence, requiring a determination by the trial court, acting upon the basis of the evidence produced before it. State ex rel. Schoenbacher v. Kelly, Mo.App., 408 S.W.2d 383.

Here defendants had agreed, ·in writing, as a condition of their continued employment that they would not engage in or become interested directly or indirectly in the business of consultation services in unemployment compensation or workmen's compensation within any state in which plaintiff was engaged in business, and that the defendants would not, in any way

directly or indirectly attempt to divert, take away, or solicit any of the clients of plaintiff for a period of three years after defendants left the service of plaintiff.

■ This restrictive covenant is clear and unequivocal. Under the facts of this case, it was also fair to all concerned. Plaintiff's principal place of business is Columbus, Ohio. Branch offices are in operation in St. Louis, Missouri and Dallas, Texas. All business involving clients who have multi-state operations are handled by the Columbus office. Plaintiff is licensed and authorized to do business in Ohio, Texas, and Missouri, and of its approximately 2000 customers, 1900 are located in those three states. All of its employees work out of St. Louis, Columbus, and Dallas offices.

■ The trial court found that the phrase "engaged in business" within any state, as used in the restrictive covenant in the employment contract and. under the evidence in this case, did not mean the mere servicing or soliciting of customers, but meant the setting up of an office or place of business for soliciting or servicing of customers, or having personnel in such offices who are performing corporate activities. We agree. The trial court did what it should have done in this instance, which was to declare the states in which plaintiff was engaged in business, as that term was intended to be used in the agreement in question, which states were Ohio, Missouri, and Texas.

■ The evidence is clear, cogent, and convincing that defendants, while they occupied positions of trust and confidence with plaintiff, were even then conspiring to go into a competing business, and that after they were discharged, defendants contacted plaintiff's customers in order to get them to cancel plaintiff's service. Their conduct amounted to tortious interference with plaintiff's customers and justified the granting of an injunction by the trial court.

Defendants' remaining argument is that the inclusion of Ohio by the trial court as a part of the prohibited area of activity was unreasonable; that Missouri follows the "blue pencil" rule, which means that if a restrictive covenant contains a word or words which are unreasonable limitations, and which, if stricken, would leave a reasonable and enforceable contract, the court could "blue pencil" or strike them out, while on the other hand if the contract contained no specifically expressed geographical area limitations, the court could not write into the contract any such limitations, but must declare the entire provision void.

This contention must fail for two reasons. First, the courts of this state, and the better reasoned authorities in other states have never allowed the usages and meaning of equity to be drowned in a murky pool of meaningless form, but have decreed enforcement as against a defendant whose breach occurred within an area in which restriction would clearly be reasonable, even though the terms of the agreement imposed a larger and unreasonable restraint. State ex rel. Schoenbacher v. Kelly, supra; Farmers Underwriters Association v. Reid, Mo.App., 425 S.W.2d 247, 1. c. 253, John Roane, Inc. v. Tweed, 33 Del.Ch. 4, 89 A.2d 548, 41 A.L.R.2d 1; Corbin on Contracts, Section 1390, pp. 67–71.

No cases have been cited to us by defendants, nor have we discovered any, where the "blue pencil" doctrine has ever been applied in Missouri in cases of this type, and we reject it here. It is true that our courts have always refused to enforce totally unreasonable contracts, but they have done so for the reasons of equity and common sense, and not because of some archaic rule of draftmanship. Second the inclusion of Ohio by the trial court as a part of the restricted area was reasonable. Forty per cent of plaintiff's customers were located in Ohio. Frick and Shoults, through their access to the files and customer contracts of plaintiff, knew who they were. If they had the opportunity to approach them on the same basis as they had plaintiff's Missouri customers, the resultant damage and loss to plaintiff could have been much greater than it had already suffered. This is evidently what the trial court had in mind when it wisely included Ohio as a part of the prohibited area.

Finally, regardless of the contract provisions, defendants are in a poor position to complain. They both occupied positions of trust and confidence with plaintiff for which they were paid salaries that were handsome even by today's standards. They were obligated by contract, by law, and by common decency to act with fidelity and good faith. Instead, they acted in their own selfish interests, being motivated not only by greed but also by revenge, providing a classic example of biting the hand that fed them. The evidence is overwhelming that they grossly violated a relationship of trust, which violation amounted to a tortious interference by Frick and Shoults in the business affairs and customer relationships of plaintiff. Opie Brush Co. v. Bland, Mo.App., 409 S.W.2d 752; May Furnace Co. v. Conaway, Mo.App., 352 S.W.2d 40. Plaintiff was entitled to the injunction granted by the trial court.

The judgment of the trial court is affirmed.

ANDERSON, P. J., and WOLFE, J., concurs.