REED, ROBERTS ASSOCIATES, INC., a
Corporation, Plaintiff-Respondent,

v.

Stewart BAILENSON,
Defendant-Appellant.

No. 36799.

Missouri Court of Appeals,
St. Louis District,
Division One.

May 11, 1976.

Shifrin, Treiman, Bamburg & Dempsey, Richard B. Dempsey, Clayton, for defendant-appellant.

Lewis, Rice, Tucker, Allen & Chubb, Mark T. Keaney, St. Louis, for plaintiff-respondent.

WEIER, Presiding Judge.

This is an appeal from a decree enjoining defendant for a period of three (3) years commencing on January 8, 1974 from (1) soliciting or acting to solicit any of plaintiff's customers, (2) making statements to plaintiff's clients to divert their business from plaintiff, and (3) engaging in consultation service in unemployment compensation and workmen's compensation matters within the states of Michigan, Illinois or Missouri. Appellant seeks a reversal of the trial court's judgment on the theory that the non-competition contract is void for lack of consideration either as an original contract or as a modification, that it is unreasonable and therefore should not be enforced in a court of equity, and that it is no longer in force since defendant has not been an employee of plaintiff's company since 1971. We affirm the findings of the trial court.

There is little conflict in the evidence. Plaintiff is engaged in the nationwide business of rendering unemployment insurance advice and service to private employers. Defendant commenced employment in the service department of plaintiff's St. Louis office on August 1, 1967. Prior to this initial employment he signed a non-competition agreement similar to the one in dispute. Defendant's duties included inter-

viewing clients, performing annual audits, and helping clients in special problem situations. Defendant was moved to plaintiff's Chicago office in the summer of 1971 and finally to its Detroit office in May of 1972. During his employment defendant signed a total of three non-competition agreements, the original agreement dated July 24, 1967, the second dated December 13, 1968, and the third, June 11 and 14, 1973. Until his resignation on January 8, 1974 defendant's duties with plaintiff remained substantially the same.

Defendant is currently employed as vice-president of the service department of James E. Frick, Inc., plaintiff's competitor. In this position defendant performs services on a nationwide scale similar to those he performed for plaintiff. Defendant has performed work in Missouri, Illinois, and Michigan, as well as other states, since he began his present employment. In addition, while in his present position defendant presented a program on unemployment compensation in June of 1974 to a hospital administrators meeting in St. Louis at which clients of plaintiff were present.

The June 1973 Non-Competition Agreement which was enforced by the trial court provides in part:

"I, the undersigned, do acknowledge that I have been employed by Reed, Roberts Associates, Inc. (Reed, Roberts) to perform such services as Reed, Roberts may direct, at a mutually agreed upon weekly salary, which employment may be terminated by me or Reed, Roberts upon one week's notice in writing, and which employment is further subject to the following terms and conditions to which I voluntarily agree:

"1. I acknowledge * * * that I have or shall become acquainted [with Reed, Roberts' business], and with employees of Reed, Roberts who perform specialized and technical services and who come in contact with Reed, Roberts clients. * * * During the course of my employment, I have learned and shall continue to learn, the names and addresses of Reed, Roberts clients, many of whom are serviced on a

national basis and shall become acquainted with the executives and administrative employees of such clients.

"2. By reason of the foregoing, I do agree,

\* \* \* \* \* \*

(b) that I shall not, at any time, either directly or indirectly solicit or conspire to solicit any of Reed, Roberts' clients, no matter where the principal office of such client shall be located.

(c) That for a period of three years from the date of termination of my employment, no matter the manner thereof, I shall not either directly or indirectly be engaged in nor in any manner whatsoever become interested, directly or indirectly, either as employee, partner, agent, stockholder, director or officer of a corporation or otherwise, in any business of the type and character engaged in by Reed, Roberts, within the geographical limits of the region wherein I may have been employed at any time by Reed, Roberts, such region being more fully circumscribed below.

(d) That Reed, Roberts shall be entitled to an injunction in any suit for such relief, should I breach the foregoing provisions hereof."

This agreement was signed by both plaintiff and defendant in June of 1973.

Defendant contends that all three non-competition agreements are void for lack of consideration. Consideration is something moving from one party to the other; it can be in the form of a legal benefit or detriment. *Melton v. ACF Industries, Incorporated*, 404 S.W.2d 772, 777[6–9] (Mo.App.1966). "A valuable consideration 'may consist of some right, interest, profit or benefit accruing to one party, or some forbearance, loss or responsibility given suffered or undertaken by the other.'" *Charles F. Curry and Company v. Hedrick*, 378 S.W.2d 522, 533[1] (Mo.1964). Clearly the defendant has given sufficient consideration to support a contract by his agreement to perform services as an employee of plaintiff and to refrain from competition with plaintiff for a period of three

years after termination of his employment. Plaintiff likewise agreed to employ defendant and pay him a weekly salary, the amount to be mutually agreed upon. *American Pamcor, Inc. v. Klote*, 438 S.W.2d 287, 290[3] (Mo.App.1969).

■ The trial court in its findings of fact determined that defendant signed the contract relied upon by plaintiff "in consideration of his employment and continued employment by plaintiff." Parties to employment contracts while they are still executory and before a breach occurs, by a later agreement, frequently rescind, alter or modify the agreement, or replace it with a substitute. This later agreement is usually referred to as a secondary contract. See Anno. 158 A.L.R. 231. A continuance by employee in the employment of employer where he is under no obligation to remain and the continuance by the employer of the employment where continuance is not required supplies adequate consideration for a secondary contract. In *City Ice & Fuel Co. v. Snell*, 57 S.W.2d 440 (Mo.App.1933), the employee, who had been employed July 1, 1931, signed a contract with a restrictive clause on November 3, 1931, and left the employment June 16, 1932. Lack of consideration for the secondary contract of employment was raised as a defense in defendant's answer. The mutual promises of the parties as to continued employment were held to be sufficient consideration. p. 442[4]. So also in the companion case of *City Ice & Fuel Co. v. McKee*, 57 S.W.2d 443, 447 (Mo.App.1933). See also *Birch v. Glasgow Savings Bank*, 114 Mo.App. 711, 90 S.W. 746 (1905), where mutual understanding and intention that future services of a 24-year employee were to be performed was adequate consideration to support an agreement to pay salary during the employee's vacation.

■ Here, we are not considering a contract of employment for a definite term where a party brings about a modification during the term without any consideration. The prior contracts between plaintiff and defendant could be terminated by either party. As found by the trial court, the third contract upon which suit was brought was based upon the consideration of continued employment.

■ Petitioner's second contention is that the third contract expands the obligations of defendant without any change in the obligation of plaintiff thereby becoming void as a substitution or modification of an earlier agreement. It is clear that an enforceable modification of a contract which is not completely performed must contain a change in the consideration from both parties. If one party only agrees to do those things which he is obliged to do while the other gives additional consideration, the modification is void. *R–Way Furniture Company v. Powers Interiors, Inc.*, 456 S.W.2d 632, 637[4, 5] (Mo.App.1970). This last or 1973 non-competition agreement differed from the others in two respects. Defendant's post-employment activities were restricted as to region rather than state, and both parties signed the agreement. As previously explained, however, the 1973 contract was supported by the mutual promises of continued employment and this contention must be ruled against defendant.

■ Petitioner also contends the non-competition agreement was not reasonable. In order to be enforceable a covenant restraining an employee must not only be legally valid but also reasonable as to the employer, the employee, and the public. *Prentice v. Williams*, 324 S.W.2d 466, 469[3] (Mo.App.1959). Reasonableness is determined by the limitations on both time and area contained in the agreement. The test applied is "whether the area in which the restriction is to be enforced is larger than reasonably necessary for the protection of the covenantee." *Renwood Food Products v. Schaefer*, 240 Mo.App. 939, 223 S.W.2d 144, 152[6] (1949). Application of this test requires "a thorough consideration of all surrounding circumstances, including the subject matter of the contract, the purpose to be served, the situation of the parties, the extent of the restraint, and the specialization of the business." *R. E. Harrington, Inc. v. Frick*, 428 S.W.2d 945, 950[3] (Mo. App.1968). The burden of proving the rea-

sonableness of the restriction is on the party claiming its benefit. *Prentice v. Williams, supra* at 470[4].

■ Defendant signed a non-competition agreement when he was hired. No one continued as an employee of plaintiff who did not sign the original and subsequent agreements. Defendant became acquainted with plaintiff's clients and had access to extensive information concerning their accounts. This client contact and information was valuable to plaintiff and potentially valuable to defendant's new employer. Non-competition agreements are common in this service industry because it is recognized that those who engage in it have a valuable interest to protect. The restriction was imposed by the trial court for three years but only extended to the three states where defendant's offices were located and not to all those with which he had any contact. It is clear that "an employer has a proprietary right in his stock of customers and their goodwill" and the courts will protect this asset against appropriation by an employee by enforcement of reasonable restrictive covenants not to compete. *Mills v. Murray*, 472 S.W.2d 6, 11[1, 2] (Mo.App.1971). Similar restrictions have been upheld. *House of Tools & Engineering, Inc. v. Price*, 504 S.W.2d 157 (Mo.App.1973). In view of the circumstances we cannot say this restriction is unreasonable.

■ It is elementary that the purpose of an injunction is to restrain actual or threatened acts which constitute a real injury. *Cissell v. Brostron*, 395 S.W.2d 322, 325[1] (Mo.App.1965). Therefore, in an action for an injunction to enforce restrictive covenants of a non-competition agreement it is not necessary to prove damages to be entitled to injunctive relief. *American Pamcor, Inc. v. Klote, supra*, 438 S.W.2d at 291[7]; *Thompson v. Allain*, 377 S.W.2d 465, 467[3] (Mo.App.1964). Here, breach of the agreement was clearly shown by defendant's action in taking employment as a national coordinator with a competitor of plaintiff. Petitioner's contentions that there was insufficient evidence of damage and that his rebuttal testimony concerning damages should have been admitted are clearly without merit.

■ Finally, petitioner contends that his employment with plaintiff terminated in 1971, and that because of the limitation of three years, the non-competition agreements are no longer in effect. This contention is based on separate W-2 federal tax forms sent to defendant while at the Detroit office from plaintiff and Reed, Roberts, Inc.—Pennsylvania Division, a company with a different IRS number from plaintiff's. Evidence was presented that this division is a wholly owned subsidiary of plaintiff. The contract contained the provision that since defendant would be employed by Reed, Roberts, or in the names of subsidiaries or affiliates, the agreement would apply to employment by them and could be enforced by the parent company. Furthermore, the determination of employee status in Missouri is based on the degree and right of control exerted over details of his work. *Talley v. Bowen Construction Co.*, 340 S.W.2d 701, 706[9] (Mo.1960). Although a circumstance, tax records should not be the sole basis upon which this relationship may be determined. Clearly defendant was controlled in his work by plaintiff until January 1974. Shortly before the trial defendant admitted in his deposition he did not believe he was employed by anyone other than plaintiff from 1971 to January 8, 1974. The necessary employment relationship did exist through January 8, 1974; therefore the non-competition agreement was clearly in force.

The judgment is affirmed.

DOWD and RENDLEN, JJ., concur.