Plaintiff, Royal Cup, Inc., filed this action for injunctive relief to prevent the defendant, D. Jack Dixon, from competing with Royal Cup in violation of a non-compete clause in an employment contract entered into between Royal Cup and Dixon. The plaintiff also sought liquidated damages as provided by the employment contract.
Dixon filed his answer and counterclaimed for salary, commissions, expenses, and severance pay allegedly owed by Royal Cup under the employment contract.
The trial court granted Royal Cup a permanent injunction against Dixon and entered a final judgment which awarded Royal Cup liquidated damages, attorney fees, and costs in the amount of $4,210.65. The court also granted Dixon a set-off in the amount of $2,158.29 based on his counterclaim.
The non-compete provisions of the employment contract provide that:
 11 (a) The Salesman, during his employment with the Company in whatever branch or branches to which he shall be assigned, or after the termination of his services for any cause, will not divulge to any person or persons, firm or corporation not connected with the Company, any of its business methods, forms, names or addresses of customers; and the Salesman further covenants that he will NOT at any time while in the employ of the Company, nor within a period of one year *Page 482 
after termination of his services with or without cause:
 (1) For himself or any other person, firm or corporation, directly or indirectly, engage in the business of selling any items of a nature similar to those listed in Exhibit "A" [coffee] hereto attached or other merchandise or products similar to or competitive with the merchandise or products handled by the Company during his period of employment, within any county in which his headquarters have been nor in any of the territories or delivery routes which shall have been assigned or entrusted to him by the Company; or,
 (2) For himself or any other person, firm or corporation, directly or indirectly, solicit or take orders for or sell or deliver any such merchandise in such county, territories or delivery routes; or,
 (3) In any way, directly or indirectly, solicit, divert, take away or interfere with or attempt to solicit, divert, take away or interfere with any of the custom, trade, business, or patronage of the Company in such country [sic], territories, or delivery routes, or in any way directly or indirectly, interfere with any of the salesmen or solicitors who shall be employed by the Company.
The test used to determine whether a restrictive contract will be enforced is whether the restriction upon one party is greater than is reasonably necessary for the protection of the other party under the facts of the particular case. Hill v.Rice, 259 Ala. 587, 67 So.2d 789 (1953).
In Robinson v. Computer Servicenters, Inc., Ala.,346 So.2d 940 (1977), our supreme court refused to enforce a non-compete clause in an employment contract where the employer intended to dismiss the employee at the time the contract was executed.
Dixon relies on Robinson and argues that Royal Cup intended to terminate him at the time he entered into the employment contract. Dixon contends that it would be inequitable and unreasonable to enforce such agreement.
Hatton Smith, a vice president of Royal Cup, who terminated Dixon, testified that he had no knowledge of Dixon's plans to compete with Royal Cup prior to the execution of the employment contract. Wayne Eason, a district manager for Royal Cup, testified that Dixon revealed to him that he (Dixon) planned to establish a coffee business that would compete with Royal Cup. However, Eason testified that he did not notify the officers of Royal Cup until after the employment contract had been executed. We can find no evidence in the instant case to indicate that Royal Cup intended to terminate Dixon prior to the execution of the employment contract. Therefore we hold that under the particular facts of this case it would not be inequitable and unreasonable to enforce the non-compete provisions of the employment contract.
Dixon also contends that his actions did not violate the non-compete provisions of the employment contract.
Paragraph 11 (a)(1) of the contract as set out above provides that a salesman will not engage in the business of coffee sales. The evidence reveals that Dixon had: (1) placed an order with a competitor, Maxwell House, for thirty-five cases of coffee; (2) printed business cards with his name and a company called "Southern Coffee Service" on the cards; (3) set up an answering service for a coffee business; and (4) obtained classified page listing for a coffee service which he identified as his own.
Paragraph 11 (a)(2) states that a salesman will not solicit orders for coffee for other makers. Yet Ina Shaw, the operator of the answering service obtained by Dixon, testified that Dixon offered to sell her Maxwell House coffee. Mrs. Shaw stated that Dixon never mentioned Royal Cup to her.
The last of the non-compete provisions, paragraph 11 (a)(3), provides that a salesman will not interfere with any other salesman. Wayne Eason, a district manager for Royal Cup, testified that Dixon offered him a partnership in a Maxwell House distributorship. Eason testified that Dixon stated that he would obtain customers for the Maxwell House distributorship while working for Royal Cup. Dixon planned to use *Page 483 
Royal Cup's vehicle to obtain his own customers as well as using Royal Cup's customers.
We view the non-compete provisions of the employment contract to be clear and unambiguous. The evidence shows that Dixon violated each of these provisions.
The last contention argued by Dixon is that the non-compete provisions in the instant case are void. Contracts restraining business are void unless they fall within an exception contained in § 8-1-1 of the 1975 Alabama Code. Section 8-1-1
(b) provides in part that:
 (b) One who sells the good will of a business may agree with the buyer and one who is employed as an agent, servant or employee may agree with his employer to refrain from carrying on or engaging in a similar business. . . .
Dixon contends that he was not "engaging in business," but was merely preparing to do so. He argues that the evidence indicates only one instance where he actually attempted to sell coffee, and that a single solicitation is not sufficient to constitute "engaging in business." As noted above, Dixon had a competing coffee business ready for operation. To hold that he was not "engaging in business" because his competing business had failed to attract a certain number of customers would be placing too severe a restriction on non-compete provisions. Furthermore, engaging in business, as used in a restrictive covenant in an employment contract, involves not only the servicing or soliciting of customers, but also means the setting up of an office or place of business for soliciting or servicing customers. R.E. Harrington, Inc. v. Frick,428 S.W.2d 945 (Mo.App. 1968). After reviewing the record, we conclude that Dixon was "engaging in business" within the meaning of §8-1-1 (b) and did violate his employment contract. Therefore the decision of the trial court is affirmed.
AFFIRMED.
WRIGHT, P.J., and HOLMES, J., concur.