Patrick **HERRINGTON** and Timothy Dean **Perkins,** Appellants,

v.

Mark **HALL,** Respondent.

No. WD 32466.

Missouri Court of Appeals, Western District.

Sept. 22, 1981.

Motion for Rehearing and/or Transfer to Supreme Court Denied Oct. 27, 1981.

Application to Transfer Denied Dec. 14, 1981.

---

William H. Woodson and Terry W. Schackmann of Spencer, Fane, Britt & Browne, Kansas City, for appellants Herrington and Perkins.

Dean A. Hodapp, Kansas City, for respondent.

Before MANFORD, P. J., and DIXON and NUGENT, JJ.

MANFORD, Presiding Judge.

Appellants seek equitable enforcement of a contractual covenant not to compete and damages for the breach thereof. Trial was had to the court without a jury. The judgment is reversed and the cause remanded with directions.

Two points of error are presented, which in summary charge the trial court erred by holding that (a) the non-compete clause was unreasonable and unenforceable and (b) damages were too speculative.

In 1969, Jim Tharp commenced operating a motor service business named Vee Village. In addition to servicing Volkswagen automobiles, the business included a machine shop and part sales operation. The business, a sole proprietorship, was located at 312 E. 17th Street, Kansas City, Missouri. In 1975, Tharp decided to attend a local law school, and thinking that this academic commitment would prevent his operation of Vee Village, he endeavored to sell the operation. He sought out many buyers, including respondent Hall. Hall did not have the purchase price, so Tharp hired him to operate the business while he (Tharp) attended school.

In 1976, Tharp and Hall entered into a written contract. This agreement provided that Hall was to operate the *service business* and was entitled to all receipts and net income from the *service business*, as well as the use of the name Vee Village. Hall was to operate the service business only. Tharp retained the parts operation and the machine shop operation. In exchange, Hall was to pay the utility bill for the entire building, to purchase parts from Tharp's parts operation at retail prices, and to accept responsibilities for debts and liabilities incurred as a result from work done at the 17th Street location. The contract provided for termination by either party upon 30-days written notice.

In 1978, Tharp sold the parts operation, along with its inventory, to appellants. Appellants subsequently operated the parts operation at the 17th Street location.

Tharp was not able to collect income from Hall, so later in 1978, Tharp and Hall entered into a new contract regarding Hall's operation of the Volkswagen service operation. In this new (1978) contract between Tharp and Hall, it was agreed that Hall could continue to operate the service operation as a business separate from the parts and machine shop operations. Hall was entitled to *full use* of the premises and equipment, the name of Vee Village, the goodwill of Vee Village, and to all receipts and net income from the service operation. Hall, in exchange, agreed to pay Tharp $350.00 per week, pay all utility bills, and accept responsibilities for debts incurred in the operation of the service business. This 1978 contract provided that as long as certain conditions were met, the contract was to continue unless terminated pursuant to the termination clause within the contract. While the 1978 contract expressly terminated the 1976 contract, the 1978 contract contained a non-compete clause identical to the non-compete clause of the 1976 contract. The parties agreed that the non-compete clause (1978 contract) would survive the termination of the 1978 contract.

In 1980, Tharp decided to sell the building on East 17th Street, all tools and equipment, and all his rights and remaining interests in Vee Village. Tharp discussed the proposed sale with appellants and others, and on August 15, 1980, Tharp sold his rights, interests, tools, and equipment in Vee Village to appellants. The agreement between Tharp and appellants expressly conveyed to appellants Tharp's legal rights and interests including trade names "Vee Village" and "Vee Village Service". The agreement also conveyed all rights, titles, and interests with respect to the repair garage and machine shop and all rights, duties, and obligations expressed within the 1978 contract between Tharp and Hall. Appellants and Tharp also executed a separate agreement assigning all rights, titles, interests, benefits, duties, and obligations under and pursuant to the 1978 contract between Tharp and Hall.

Appellants then delivered to Hall a termination notice of the 1978 contract. This notice directed Hall to vacate the premises. As a result of this notice, Hall arranged for the rental of space for a Volkswagen repair service business at 27th and Warwick Trafficway, Kansas City, Missouri. The distance between 312 E. 17th Street (the location of Tharp's business) and 27th and Warwick Trafficway (the location of Hall's later operation) is approximately one mile. On September 1, 1980, Hall commenced operation (at 27th and Warwick Trafficway) of his business under the name Vee Village. Hall also transferred the "Vee Village Service" yellow pages phone number (originally used by Tharp and later used by appellants) to this new location. Hall was able to take with him four of the employees from the original "Vee Village" location. Hall admitted that he chose the new location close to the original Vee Village location to retain customers of Vee Village, and further acknowledged that his new business would be a competitor with his former business.

During the three-year period that Hall operated the service business on East 17th Street, his net income was as follows: $26,279 for 1977, $42,411 for 1978, and $49,331 for 1979. Hall's net income from his operation at 27th and Warwick Trafficway was $2,600.37 for September, 1980; $2,942.87 for October, 1980; and $3,178.30 for November, 1980. For the same three months, appellants lost $2,919.41 on a 40% volume of business conducted prior to Hall's competition.

This action commenced, resulting in judgment by the trial court, which concluded that the non-compete clause was unreasonable and unenforceable, damages claimed were too speculative, that as a matter of law the trade name "Vee Village" and the derivative goodwill was the property of appellants and that neither party was entitled to punitive damages. In its judgment, the trial court permanently enjoined Hall from using the name "Vee Village Service", "Vee Village Parts" or any similar sounding name. The trial court also directed Hall to cease the use of the original yellow pages phone number and permanently enjoined all

parties from the use of the phone number. This appeal followed.

Review of this cause is governed by Rule 73.01 and the interpretation given that rule by *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976), which holds that a judgment shall not be reversed in cases wherein the trial court sits without a jury unless such judgment is against the weight of the evidence, unless there is no substantial evidence to support it, or unless the judgment erroneously declares the law or erroneously applies the law. As will be observed from the discussion infra, the judgment herein is reversed and the cause remanded because, as entered, the judgment violates the rule in *Murphy* because it erroneously applies the applicable law.

The particular facts and circumstances herein spawn three questions which, when addressed, illustrate the result which is reached herein. These questions are: (1) Was the covenant not to compete reasonable and enforceable? (2) Was respondent's challenge to the assignability of the covenant properly advanced on appeal? (3) Were damages herein so speculative as to be nonascertainable?

As with such covenants, it is necessary, in order to arrive at a determination of their reasonableness and hence, their ultimate enforceability, to consider what economic benefits, if any, are readily ascertainable from such covenants. In the instant case, Tharp sought to sell his "Vee Village" business before entering law school. The contracts entered into between Tharp and Hall were obviously a means to maintain the operation and value of the business until such time as Tharp (1) sold the business for what he thought to be a profitable value or (2) until Tharp elected to resume operation of the business himself. Evidence that Tharp clearly intended to preserve his business investment is supported by his allowing Hall to continue to use the name "Vee Village". Thus, the evidence reveals a legitimate business purpose as opposed to a mere output restriction, which has led the courts to disfavor bare restraints of trade.

The contracts entered into between Tharp and Hall further reflect the encouragement of the continuation of an ongoing business enterprise engaged in a productive economic activity within the community. Assuming, for the moment, that there had been no agreements, Tharp may have found it more profitable to close the business and to sell all of the assets. This would have resulted in depriving the community marketplace of an integrated business activity.

A second economic consideration, and one which is particularly applicable to the instant case since Tharp wanted to sell the business, was the development of customer contacts in the operation of "Vee Village", which was an obvious valuable incident to the operation of that business. In the course of Hall's management of "Vee Village", Hall could have (and the record reveals he in fact did) develop contacts with customers that could have reduced the value of "Vee Village" should he have decided (which the record reveals he in fact did) to compete with "Vee Village" subsequent to the termination of the agreement.

While, under the law of our state, an employer cannot extract an enforceable restrictive covenant merely to protect himself from the competition of an employee, "a temporally and spatially limited restraint may be deemed reasonable and enforceable in equity if a legitimate protectable interest of the employer is served." *Deck and Decker Personnel Consultants v. Pigg*, 555 S.W.2d 705, 707 (Mo.App.1977). Under the authority within our state, it appears that customer contacts, which are the focus of an agreement not to compete, constitute an enforceable interest in equity.

An assessment of the reasonableness of such covenants includes consideration of surrounding circumstances, which includes the subject matter of the contract, the purpose served, the situation of the parties, the extent or limits of the restraint and the specialization of the business venture. *House of Tools and Engineering, Inc. v. Price*, 504 S.W.2d 157, 159 (Mo.App.1973), citing to *Harrington, Inc. v. Frick*, 428 S.W.2d 945 (Mo.App.1968).

Review of the Tharp-Hall contracts reveals that they were not conventional employment contracts. Appellants argue that the contracts were a sort of or akin to a franchise agreement. As a general proposition, non-compete covenants ancillary to franchise agreements are enforceable if reasonable and consistent with public policy. *Mansfield v. B. and W. Gas, Inc., et al.,* 222 Ga. 259, 149 S.E.2d 482 (1966); *Williams v. Shrimp Boat, Inc.,* 229 Ga. 300, 191 S.E.2d 50 (1972); *Shakeys, Inc. v. Martin,* 91 Idaho 758, 430 P.2d 504 (1967); *McDonalds System, Inc. v. Sandy's, Inc.,* 45 Ill.App.2d 57, 195 N.E.2d 22 (1963). For authority considering non-compete covenants ancillary to franchise agreements which are analogous to employment contracts, see 50 A.L.R.3d 746, 749 (1973).

It is apparent that Tharp desired protection of a legitimate pecuniary interest in the stock of "Vee Village", the customers, and the "goodwill" which accompanied the trade name. As has been pointed out, customer contact is judicially recognized as a legitimate protectable interest, *Deck and Decker, House of Tools, Harrington, supra, Mills v. Murray,* 472 S.W.2d 6 (Mo.App. 1971), and *Renwood Food Prdts. v. Schaefer,* 240 Mo.App. 939, 223 S.W.2d 144 (Mo. 1949). The above facts and circumstances clearly establish that the covenant herein is ancillary to a legitimate protectable interest.

There remains, however, a further consideration. Even though such a covenant is found to be ancillary to a legitimate protectable interest, it could fail as to enforceability if found to be unreasonable concerning the length of time and extent of geographical restraint. In the covenant between Tharp and Hall, the duration of time was three years and the geographical limitation was ten miles. Under existing authority, such restraints appear to be reasonable. See *Reed, Roberts Associates, Inc. v. Bailenson,* 537 S.W.2d 238 (Mo.App.1976), [where an injunction was upheld against a former employee of an unemployment insurance counseling firm, the injunction preventing the former employee from soliciting employer's customers for three years];

*House of Tools, supra,* [which upheld a noncompete covenant that employee would not engage in competition with former employer for three years in the distribution of pneumatic and hydraulic tools in a two-state area]; *Mills v. Murray, supra,* [former employee held liable for breach of three-year restrictive covenant that he would not solicit, contract, or render similar services to any enterprise which had been a client of the plaintiff for one year prior to termination of employment in an eleven-state area]; *Thompson v. Allain,* 377 S.W.2d 465 (Mo.App.1964), [covenant of three-year duration enforced against former member of medical partnership]; and *Harrington, supra,* [three-year non-compete covenant regarding the furnishing of unemployment compensation cost control services upheld]. See also *Enforceability of Restrictive Covenant as Affected by Duration of Restriction,* 41 A.L.R.2d 15 (1955).

As to geographical or territorial limits or restrictions, see *Willman v. Beheler,* 499 S.W.2d 770 (Mo.1973), [five year, twenty-five mile limit on practice of medicine upheld]; *Reed, Roberts Associates, supra,* [three-state area not unreasonable]; *Chemical Fireproofing Corp. v. Bronska,* 542 S.W.2d 74 (Mo.App.1976), [upholding two-state area]; and *Thompson v. Allaine, supra,* [fifty-mile radius upheld]. See also *Enforceability of Restrictive Covenant as Affected by Territorial Extent of Restriction,* 43 A.L.R.2d 94 (1955).

Under the evidence, it must be concluded that the covenant not to compete executed by Tharp and Hall was ancillary to a legitimate protectable interest, that its terms as to duration of time (three years) and the geographical or territorial limits or restrictions (10 miles) were within limits and restrictions approved by our courts and as a result, was reasonable and enforceable. The answer to question (1) is answered affirmatively.

In addressing question (2), it must be determined initially whether respondent's challenge to the assignability of the non-compete covenant was ever before the trial

court as a defense. On this appeal, respondent Hall challenges the assignability of the covenant. Review of the pleadings, evidence, findings, and conclusions fails to reveal any indication that this issue was tried to the court or that this issue was ever considered by the trial court. Appellants argue that Hall never suggested to the trial court that the assignment was invalid, and the legal file reflects that the trial court, in its findings of fact, declared that "a written assignment of contract rights was in fact made and delivered on August 1, 1980." As opposed to a defense of non-assignability, Hall defended against the enforceability on the basis of unreasonableness and that ownership of the business resided in Hall. It should be noted that the claim of ownership has been abandoned on this appeal, leaving Hall's sole contention as one of unreasonableness. The issue of unreasonableness has been addressed and determined under question (1) above.

█ Neither Hall's suggested findings and conclusions, nor his motion for new trial, (which he filed although not required to do so) contain a challenge to the assignability of the covenant. Being raised for the first time on appeal, such challenge comes too late to challenge the judgment of the trial court. *M.F.A. Mutual Ins. Co. v. Southwest Baptist College, Inc.*, 381 S.W.2d 797, 803 (Mo.1964) and *Stevens v. Missouri Pacific R. R.*, 355 S.W.2d 122, 127 (Mo.1962). Appellate courts in our state review a case upon the same theory which it was tried, and neither party is permitted to change his theory of the case on appeal. *Jenni v. Gamel*, 602 S.W.2d 696 (Mo.App.1980); *Blair v. Blair*, 600 S.W.2d 143 (Mo.App. 1980).

█ Since the record clearly reveals respondent's challenge to the assignability of the covenant not to compete was not properly advanced on appeal, this court declines to consider it.

Concerning question (3) above, it falls to this court to determine whether appellants' claim for damages was too speculative and thus nonascertainable. Respondent Hall argues that the instant proceedings fall di-

rectly within *Coonis v. Rogers*, 429 S.W.2d 709 (Mo.1968) and *Orchard Container Corp. v. Orchard*, 601 S.W.2d 299, 305 (Mo.App. 1980) for the general proposition that "the recovery of anticipated profits of a commercial business is . . . too remote, speculative, and too dependent upon changing circumstances to warrant a judgment for their recovery." However, in *Orchard*, the court pointed out, that ". . . an exception to this rule exists where anticipated profits are 'made reasonably certain by proof of actual facts, with present data for rational estimate of their amount; . . .' and where 'proof of the income and expenses of the business for a reasonable time anterior to its interruption, with a consequent establishing of the net profits during the previous period is shown.'".

Modern emphasis on the requirement that damages be shown with certainty is on the *fact* of damages and not on the particularized amount. In *Naeger v. Naeger*, 339 S.W.2d 492, 498 (Mo.App.1960), the court held:

> "The rule that governs . . . is . . . as follows: There is a clear distinction between the measure of proof necessary to establish the fact that the plaintiff has sustained some damage and the measure of proof necessary to enable the jury to fix the amount. Formerly, the tendency was to restrict the recovery to such matters as were susceptible to having attached to them an exact pecuniary value, but it is now generally held that the uncertainty which prevents recovery is *uncertainty as to the fact of the damage and not as to its amount* and that where it is certain that damage has resulted, mere uncertainty as to the amounts will not preclude the right of recovery." (emphasis added)

More recently, the court in *Riddle v. Dean Machinery Co.*, 564 S.W.2d 238, 257 (Mo.App.1978) cited with favor the following from 22 Am.Jur.2d "Damages" § 177:

> "[The general rule is] that prospective profits from an established business, prevented or interrupted by the tortious conduct of the defendant, are recoverable

when it is proved: (1) that it is reasonably certain that such profits would have been realized except for the tort, and (2) that the lost profits can be ascertained and measured, from the evidence introduced, with reasonable certainty . . . the damages may not be left to mere speculation or conjecture."

The question of right to damages for lost profits due to competition in violation of a covenant not to compete was squarely dealt with in *Mills v. Murray, supra*, at 16, 17, where the court stated:

"In determining whether plaintiffs have proved actual damage, and thus their cause of action for conspiracy to induce breach of their restrictive covenant, we note that, '(g)enerally, the measure of damages for procuring the breach of a contract "is the loss either of property or of personal benefit, which except for such interference, the plaintiff would have been able to attain or enjoy, including such loss of profits as the plaintiff can prove to have resulted directly and proximately from the wrongful acts." 30 Am.Jur. Interference, Sec. 59, p. 94.' *Coonis v. Rogers*, Mo., 429 S.W.2d 709, 714[2–5]. Plaintiffs' claim to actual damages derives exclusively from the loss of anticipated profits. *Since '(e)xpected profits are in their nature contingent upon many changing circumstances, uncertain and remote at best, * * * (t)hey may be recovered only when they are made reasonably certain by proof of actual facts, with present data for a rational estimate of their amount; and, when this is made to appear, they may be recoverable.' Morrow v. Missouri Pac. Ry. Co.*, 140 Mo.App. 200, 123 S.W. 1034, 1039; *Anderson v. Abernathy*, Mo., 339 S.W.2d 817, 824[5–7]. *The loss of profits which plaintiffs may claim as the result of the breach of their contract is the loss of net profits, that amount plaintiffs would have realized in the usual course of business if their clients had not been lost to PCS through defendants' activities. Morrow v. Missouri Pac. Ry. Co.*, 123 S.W. l.c. 1039; *Red-E-Gas Company v. Meadows*, Mo.App., 360 S.W.2d 236, 240[4, 5]. And,

indispensible to a determination of net profits is proof of income and expenses as they relate to the subject of the loss. *Fuchs v. Curran Carbonizing and Engineering Co.*, Mo.App., 279 S.W.2d 211, 219[16, 17]." (emphasis added)

The record in this proceeding reveals Hall's admission of attracting approximately 60% of the business of Vee Village prior to September 1, 1980. In addition, appellants retained 40% of the business of Vee Village prior to September 1, 1980. The net yearly income to Vee Village Service in 1979 (prior to Hall's competition) was $49,331.40 on a gross income of $471,484.44. Hall made a total net income of near $9,000 for the months of September, October, and November, 1980 on gross income of $85,000. Appellants sustained net operating losses of nearly $3,000 on gross revenues of $47,675. This evidence is sufficient to bring this case within the rule of *Mills, supra*, and the court's ruling that the damages were so speculative as to be nonascertainable erroneously applies the law and as a result, such ruling violates the rule in *Murphy v. Carron, supra*. The answer to question (3) must be answered in the negative. Point (b) is sustained to the benefit of appellants.

The judgment is reversed and the cause remanded for the reasons set forth herein. The evidence on the record is sufficient to sustain a judgment holding the covenant not to compete to be reasonable and enforceable. Further trial of that issue is neither necessary nor warranted. The cause is remanded with directions to the trial court to limit retrial of this cause, if any, to the issue of damages only in conformity with the opinion expressed herein.

All concur.