841 F.2d 1126
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
MONSANTO COMPANY, Plaintiff-Appellant,
v.
Warren J. MANNING, Defendant-Appellee.
 No. 87-1790.
 United States Court of Appeals, Sixth Circuit.
 March 8, 1988.
 
 Before RALPH B. GUY, Jr., DAVID A. NELSON, and BOGGS, Circuit Judges.
 PER CURIAM.
 
 
 1
 Monsanto Company appeals the district court's order denying its request to extend until trial a preliminary injunction, which prohibited Warren Manning, a former employee, from promoting, marketing or offering for sale "greenhouse films" to any customer or distributor that he sold to during his last three years of employment with Monsanto. We affirm.
 
 
 2
 * Monsanto Company develops and manufactures a variety of chemical and plastic products, including thin sheet polyethylene film through its Film Business Group. These film products are used primarily in the agricultural field to cover greenhouses and in the disposable diaper industry.
 
 
 3
 In early 1987, Warren Manning, Monsanto's Midwest sales representative for the Film Business Group, left and took a comparable position with Ethyl Corporation. Ethyl is Monsanto's chief competitor in the sale of plastic film products. During his employment with Monsanto, Manning sold horticultural films (also known as "greenhouse films").
 
 
 4
 Fearing Ethyl would gain an unfair advantage from Manning's assistance, Monsanto sued Manning in district court, alleging trade secret misappropriation, breach of contract and breach of fiduciary duty. In the misappropriation and fiduciary duty counts, Monsanto alleged that Manning was using Monsanto's trade secrets and confidential information for his and Ethyl's benefit.
 
 
 5
 On the breach of contract count, Monsanto alleged that Manning breached his employment contract, which Manning signed at the beginning of his relationship with Monsanto in 1972. The employment contract prohibited Manning, during his employment with Monsanto and thereafter, from using or disclosing confidential information, except as such disclosure or use may be required in connection with his employment or may be consented to in writing by Monsanto.[1] This provision was to remain in effect "after termination of [Manning's] employment, whether such termination [was] in accordance with this Agreement, or for any reason whatsoever, with or without cause or voluntary or involuntary."
 
 
 6
 The employment contract contained a non-competition clause, which read as follows:
 
 
 7
 Employee shall not, without prior written consent of Monsanto, for his own account or as an officer, member, employe, consultant, representative or advisor of another, during his employment by Monsanto and for a period of three (3) years thereafter, for any reason whatsoever, engage in or contribute his knowledge to engineering, development, manufacture, research (including, without limitation, market as well as technical research), or sales relating to any compound, product, equipment, process or material that is or was involved in any work performed at any time by Employe for Monsanto or any subsidiary. However, the foregoing provision shall not prohibit Employe from engaging in any work at any time after leaving the employ of Monsanto upon Employe furnishing to Monsanto proof that Confidential Information of Monsanto or any subsidiary acquired or learned by Employe will not be involved in such work.
 
 
 8
 On the basis of the contract, Monsanto sought injunctive relief prohibiting Manning from using or disclosing Monsanto's trade secrets and confidential information, and from "working for or with Ethyl Corporation, or any other organization or any affiliate thereof, in the research, development, manufacture, marketing, sale or use of plastic film products for a three-year period." Monsanto also sought an order compelling Manning to turn over any trade secrets, confidential information and tangible materials in his possession which related to Monsanto's business or his employment with the company.
 
 
 9
 Pending a hearing, the district court granted a temporary restraining order prohibiting Manning from using or disclosing to any third party any of Monsanto's trade secrets or confidential information, or any "documents, materials or tangible things of any type in his possession" which related to Monsanto's business or Manning's employment with Monsanto. This included "all memoranda, diaries, notes, records, sketches, plans, specifications or other documents or things relating, directly or indirectly," thereto.
 
 
 10
 A hearing was held several days later, at which time Manning and two other witnesses testified: Dixon Rimer, National Sales Manager for the Film Business Group, and Donald Kaldenberg, a retired Monsanto executive who signed Manning's employment agreement in 1972. On February 26, 1987, the district court granted a preliminary injunction which "continued in force and effect" the terms and provisions of its previous restraining order. In addition, the court enjoined Manning for 180 days from "engaging in any way in the promotion, marketing, offering for sale or sale of horticultural films (also known as greenhouse films) to any and all customers and distributors in the United States and Canada that he ha[d] sold any of such films to in the past three years on behalf of ... Monsanto."[2] Manning was also required to return to Monsanto any written or recorded material containing confidential or trade secret information.
 
 
 11
 Although the court's order with respect to non-competition was to expire on August 25, 1987, Monsanto could not secure a trial on the merits until December 1987. Accordingly, Monsanto moved for extension of the preliminary injunction until trial. In support, Monsanto provided new deposition testimony of Manning and Thomas Gipson, Manning's peer at Monsanto.
 
 
 12
 The district court denied the motion from the bench. After remarking that Manning was merely a "salesman," the court concluded that 180 days was the limit under the public policy of Michigan and the United States "to enjoin someone from lawfully making a living," and that period was sufficient time for Monsanto to do whatever it needed "to make certain somebody wasn't going to come and take [its] customers."
 
 
 13
 Thereafter, Monsanto filed a notice of appeal, and sought extension of the injunction and an expedited appeal from this court. On August 25, 1987, a panel of this court granted Monsanto's motion, extending the injunction until such time as a panel of this court decided this issue on the merits.
 
 
 14
 Since oral argument, we have been informed that the scheduled trial date, originally set for December 1987, has been postponed indefinitely.
 
 II
 
 15
 At the outset, we note the limited nature of this appeal. The sole issue is whether the district court erred in refusing to extend until trial the preliminary injunction, prohibiting Manning from approaching those customers and distributors to whom he had sold greenhouse film in the last three years of his employment with Monsanto. We have no occasion to review the court's order restricting Manning from using or disclosing trade secrets or confidential information, or from taking advantage of tangible materials in his possession which relate to Monsanto's business or Manning's employment with the company. By its terms, the court's February 26, 1987, order with respect to these issues applies until trial. Accordingly, we only discuss Monsanto's breach of contract claim.
 
 III
 
 16
 In reviewing a district court's order denying extension of a preliminary injunction, our task is limited to determining if the lower court abused its discretion. See Gaston Drugs, Inc. v. Metropolitan Life Insurance Co., 823 F.2d 984, 988 (6th Cir.1987). "A district court abuses its discretion when it relies on clearly erroneous findings of fact, or when it improperly applies the law or uses an erroneous legal standard." Christian Schmidt Brewing Co. v. G. Heileman Brewing Co., 753 F.2d 1354, 1356 (6th Cir.) (citations omitted), cert. denied, 469 U.S. 1200 (1985).
 
 
 17
 The district court must consider four factors when a claim for injunctive relief is presented: 1) the likelihood of success on the merits; 2) the irreparable harm which could result without the requested relief; 3) the impact on the public interest; and 4) the possibility of substantial harm to others. Ibid. The burden is on the moving party to show that these factors weigh in favor of granting injunctive relief. See Gaston Drugs, 823 F.2d at 988.
 
 
 18
 We must first determine whether there is a strong or substantial likelihood that Monsanto will prevail at trial in enforcing the covenant not to compete in Manning's employment contract. Resolution of this question hinges on the appropriate state law governing the agreement.
 
 
 19
 Since this diversity action was brought in the United States District Court for the Eastern District of Michigan, Michigan conflict of law rules apply. Klaxon Co. v. Stentor Electric Manufacturing Co., 313 U.S. 487 (1941); Tele-Save Merchandising Co. v. Consumers Distributing Co., 814 F.2d 1120, 1122 (6th Cir.1987). Under Michigan law, the validity and construction of a contract are to be determined by the law of the place where the contract was entered into. Wells v. 10-X Manufacturing Co., 609 F.2d 248, 253 (6th Cir.1979) (relying on Rubin v. Gallagher, 294 Mich. 124, 128, 292 N.W. 584, 586 (1940)). However, if the contract is to be performed in a different state, then the law of the latter state governs. M & A Associates Inc. v. VCX, Inc., 657 F.Supp. 454, 460 (E.D.Mich.1987) (relying on George Realty Co. v. Gulf Refining Co., 275 Mich. 442, 266 N.W. 411 (1936)). "In general, the state of performance refers to the state in which the party who allegedly breached the contract was required to perform." Ibid. (citations omitted).
 
 
 20
 In this case, the place of performance is uncertain. Manning covered a multi-state area as Midwest sales representative for Monsanto. Therefore, the place where the contract was made governs. Ibid. ("the performance rule does not determine choice of law when no state can be identified as the primary place of performance."); Leff v. NAC Agency, Inc., 639 F.Supp. 1426, 1428 (E.D.Mich.1986) (same). According to Michigan law, a contract is deemed to have been made in the state where the last act necessary to make it a binding agreement took place. Wells, 609 F.2d at 253.
 
 
 21
 Both parties agree that Manning signed the employment contract in Michigan. On the basis of this fact, Manning contends that Michigan law should govern the contract. If he is correct, it is clear the covenant would not be enforceable in Michigan and, accordingly, there would be little likelihood of success on the merits.
 
 
 22
 At the time Manning signed the employment contract, Michigan law prohibited covenants not to compete. M.C.L.A. Sec. 445.761, M.S.A. Sec. 28.61 [hereinafter "anti-covenant statute"]. See Compton v. Joseph Lepak, D.D.S., P.C., 154 Mich.App. 360, 397 N.W.2d 311 (1986). This statute had been "rigorously enforced" by Michigan courts ever since 1905. Muma v. Financial Guardian, Inc., 551 F.Supp. 119, 122 (E.D.Mich.1982).[3] Effective March 19, 1985, the Michigan Antitrust Reform Act, M.C.L. Sec. 445.787, M.S.A. Sec. 28.70(17), repealed the anti-covenant statute. Significantly, however, Michigan courts have refused to enforce Michigan agreements entered into during the life of the anti-covenant statute, even though, as in this case, the suit to enforce the agreement arises after the statute has been repealed. Lepak, 397 N.W.2d at 315-17; Cardiology Associates of Southwestern Michigan v. Zencka, 155 Mich.App. 632, 400 N.W.2d 606, 608 (1985). As the court said in Lepak, 397 N.W.2d at 316, "When an agreement or contract is entered into in violation of the statute, repeal of that statute does not make the agreement valid because the Legislature cannot validate a contract which never had a legal existence." (citations omitted). Thus, under Michigan law, there would be little likelihood of success on the merits because the covenant would be unenforceable in Michigan. Monsanto would thus not be entitled to an extension of the injunction until trial. Centurion Reinsurance Co. v. Singer, 810 F.2d 140, 145 (7th Cir.1987) (it is error to grant a preliminary injunction if the party has no chance or a very slight chance of prevailing on the merits, no matter how strong the balance of irreparable harms may incline in favor of the party seeking the injunction).
 
 
 23
 For Monsanto to prevail, it must satisfy its burden of showing that the law of a different state governs the covenant not to compete in Manning's employment contract. Monsanto argues that Missouri law is controlling. It contends that although Manning first signed the agreement in Michigan, he subsequently sent it to Missouri, where the company signed the contract.
 
 
 24
 Missouri law generally permits covenants that prohibit an employee from soliciting customers of the former employer. The leading case in Missouri is Osage Glass, Inc. v. Donovan, 693 S.W.2d 71 (Mo.1985). There, the Missouri Supreme Court upheld a covenant that restricted the employee from soliciting his former employer's customers for a period of three years. The court ruled that such covenants would be upheld if they served "a proper interest of the employer in protecting the good will of the business," and were "reasonably limited in time and space." Id. at 74. The court had no trouble finding that these requirements were met. The court noted initially that an express agreement not to compete may be enforced against employees having substantial customer contacts, as these contacts were protectible interests of the employer. Ibid. There was no need for the employee to possess trade secrets or confidential customer lists. The court then held that the covenant served a proper employer interest: "The purpose of the restriction is to keep the covenanting employee out of a situation in which he might be able to make use of contacts with customers to his former employer's disadvantage." Id. at 75.
 
 
 25
 Although the parties in Osage Glass did not mount a direct attack on the covenant's three-year time limitation and the geographical limitation of the State of Missouri, the Missouri Court of Appeals has enforced covenants with identical or similar terms. See, e.g., Orchard Container Corp. v. Orchard, 601 S.W.2d 299 (Mo.App.1980) (three-year prohibition against soliciting former employer's customers located in 125-mile radius from St. Louis upheld); Chemical Fireproofing Corp. v. Bronska, 542 S.W.2d 74 (Mo.App.1976) (two-year prohibition covering two states upheld); Empiregas Inc. of Malden v. Hogeland, 538 S.W.2d 767 (Mo.App.1976) (three-year prohibition upheld).
 
 
 26
 In this case, there is a strong likelihood that the covenant not to compete would be upheld under Missouri law. Like the cases cited above, the agreement prohibits Manning from contacting Monsanto's customers and distributors for a period of three years concerning the sale of greenhouse film. Although the covenant here does not contain a geographical limitation, this is not fatal under Missouri law. Covenants without such a limitation have been enforced by Missouri courts as being no larger than reasonably necessary for protection of the covenantee. National Starch & Chemical Corp. v. Newman, 577 S.W.2d 99, 105 (Mo.App.1978). Since the covenant targets particular customers in a geographical area, rather than the whole area itself, it is reasonably tailored to meet its intended objective.
 
 
 27
 Assuming Missouri law applies, Manning responds that, although the agreement is valid in that state, it still violates the public policy of Michigan. Manning is correct that "Michigan courts will enforce a Missouri contract, valid there, 'to the extent [its] provisions do not contravene the public policy of the forum.' " Muma v. Financial Guardian, Inc., 551 F.Supp. 119, 121 (E.D.Mich.1982) (quoting Structural Dynamics Research Corp. v. Engineering Mechanics Research Corp., 401 F.Supp. 1102, 1115 (E.D.Mich.1975)). With the Michigan Legislature's repeal of the anti-covenant statute, however, a Missouri contract containing a covenant not to compete of this sort is no longer against the public policy of Michigan.
 
 
 28
 Manning cites Lepak and Zencka, discussed above, which refuse to enforce covenants not to compete entered into during the life of the Michigan anti-covenant statute, even though the suit to enforce the agreement arises after the statute's repeal. These cases are inapposite. The Michigan agreements in these cases were invalidated because they were void under Michigan law when entered into, and the subsequent repeal of the statute did not resurrect them. By contrast, if the contract in this case is a Missouri contract, it was valid when signed in 1972. Michigan law has no impact on the legality of a Missouri contract until a party seeks to enforce the covenant not to compete in a court in Michigan. In this case, enforcement is sought at a time when Michigan law does not prohibit such covenants as a matter of public policy.
 
 
 29
 We need not dwell on this issue, however, because Monsanto has not met its burden of showing that Missouri law should govern this contract. Monsanto relies on the testimony of Donald Kaldenberg, who signed Manning's employment contract for Monsanto in 1972. When first asked where he signed Manning's contract, Kaldenberg stated that he signed it in Missouri. In elaborating, however, he explained only that he usually signed such employment agreements in Missouri, although he also signed a number of them in Georgia. This is insufficient to compel the conclusion that the contract was last signed in Missouri; either Missouri law or Georgia law[4] could be applicable.
 
 
 30
 Even assuming Kaldenberg signed the contract in Missouri, Monsanto has also failed to show that his signature on behalf of Monsanto was a necessary element for formation of the contract, in which case the "last act necessary to make it a binding agreement" occurred in Michigan. Wells v. 10-X Manufacturing Co., 609 F.2d 248, 253 (6th Cir.1979). Thus, the district court did not abuse its discretion, on this record, by refusing to extend the injunction.[5]
 
 
 31
 Focusing on the irreparable injury it may sustain without extension of the injunction, Monsanto contends that Manning's product knowledge, sales experience and close contacts with customers and distributors in his region give him an advantage for up to two years in selling greenhouse films. The district court did not accept these assertions. The lower court indicated that six months was sufficient time for Monsanto to make arrangements that would counter any effect Manning would have once he resumed his relationship with his former contacts. Keeping in mind that Manning is restricted from using or disclosing trade secrets or confidential information, we cannot say, based on our review of the entire record, that Monsanto has met its burden of clearly showing that the threat of irreparable harm is actual and imminent. Cf. Medline Industries, Inc. v. Grubb, 670 F.Supp. 831, 837-38 (N.D.Ill.1987).
 
 
 32
 We will not canvass the record in order to point out Monsanto's deficiencies of proof in this respect. "An appellate court in reviewing the propriety of a preliminary injunction should refrain from the unnecessary comment on the evidence or review of the merits of the case since the case has yet to be heard in full on the merits." Christian Schmidt Brewing Co. v. G. Heileman Brewing Co., 753 F.2d 1354, 1356 (6th Cir.) (citations omitted), cert. denied, 469 U.S. 1200 (1985). We note, however, that a former employee's general knowledge, sales experience and professionalism will not provide an adequate basis for an injunction. See Samuel Bingham Co. v. Maron, 651 F.Supp. 102, 106 (N.D.Ill.1986); Follmer, Rudzewicz & Co. v. Kosco, 420 Mich. 394, 362 N.W.2d 676, 680 & n. 4 (1984). Moreover, it is not altogether clear that Monsanto could not be compensated for any loss occasioned by Manning's competition before trial. See Consolidated Brands, Inc. v. Mondi, 638 F.Supp. 152, 155 (E.D.N.Y.1986); Merrill Lynch, Pierce, Fenner & Smith, Inc. v. de Liniere, 572 F.Supp. 246, 249 (N.D.Ga.1983). See generally Tri-State Generation & Transmission Association v. Shoshone River Power, Inc., 805 F.2d 351, 355 (10th Cir.1986) ("Injury is generally not irreparable if compensatory relief would be adequate.").
 
 
 33
 In its submissions to this court, Monsanto argued that the injunction should be extended primarily because the time period it would cover, August through December 1987, was particularly crucial in the sale of polyethylene films. This concern is no longer applicable in this case, inasmuch as Manning has been restricted from competing during this period. Thus, Monsanto's argument, at least at this stage of the case, has lost much of its force.
 
 
 34
 We also note that the length of this appeal has increased the potential harm to Manning if the injunction were extended. We have been informed that the trial date, originally set for December 1987, has been postponed indefinitely. Manning has been restricted from competing, pendente lite, well beyond the period originally contemplated by the parties. We cannot say, on this record, that Monsanto has sustained its burden of showing that the harm to Manning is minimal.
 
 
 35
 We conclude that the district court did not abuse its discretion in rejecting Monsanto's motion to extend the injunction until trial. Accordingly, we VACATE the previous order of this court and AFFIRM the order of the district court.
 
 
 
 [1]
 Manning was also under an obligation to "deliver promptly to Monsanto at the termination of his employment ..., without retaining any copies, notes or excerpts thereof, all memoranda, diaries, notes, records, plats, sketches, plans, specifications or other documents relating, directly or indirectly, to any Confidential Information made or compiled by, or delivered or made available to, or otherwise obtained" by Manning. This applied to confidential information concerning customers, contractors and others with whom Monsanto had a business relationship. There has been no allegation that Manning has failed to comply with this provision
 
 
 [2]
 The court's order also stated that Manning was not enjoined from selling other types of film products, except diaper film, which was the subject of a separate order. This latter order is not before us on this appeal
 
 
 [3]
 There are two statutory exceptions, neither of which assists Monsanto. M.C.L. Sec. 445.776. The anti-covenant statute does not apply to contracts for the sale of a business, which is inapplicable here. It also does not apply to "any contract of employment under which the employer furnishes or discloses to the employe a list of customers or patrons, commonly called a route list, within certain territory in which such employe is to work, in which contract the employe agrees not to perform similar services in such territory for himself or another engaged in a like or competing line of business for a period of 90 days after the termination of such contract or services." (emphasis added). Since the injunction here has already been in force well past 90 days, this exception has no application in this case
 
 
 [4]
 Under Georgia law, a covenant not to compete cannot be enforced unless there is a specific limitation on the geographical territory covered by the covenant. Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Stidham, 658 F.2d 1098, 1101 (5th Cir.1981) ("The Supreme Court of Georgia has injected a bright-line test into this area by requiring an express geographical description of the territory covered, without reference to the overall reasonableness of the limitation in light of the nature of the profession or trade involved.") (relying on Guffey v. Shelnut & Associates, Inc., 247 Ga. 667, 670, 278 S.E.2d 371, 373 (1981)). The Supreme Court of Georgia reaffirmed this absolute requirement in Rash v. Toccoa Clinic Medical Associates, 253 Ga. 322, 320 S.E.2d 170, 172 (1984). Because the covenant not to compete in Manning's employment contract does not contain any geographical limitation, it would be unenforceable under Georgia law. Prudential Insurance Co. v. Baum, 629 F.Supp. 466, 469 (N.D.Ga.1986); Marketing & Research Counselors, Inc. v. Booth, 601 F.Supp. 615, 616 (N.D.Ga.1985)
 
 
 [5]
 We express no opinion on the applicability of the last sentence in the covenant not to compete, which allows an employee to compete upon furnishing proof to Monsanto that its confidential information will not be involved in his work