**NAIL BOUTIQUE, INC., Respondent,**

v.

**Jane CHURCH, Appellant.**

**No. 15459.**

Missouri Court of Appeals,
Southern District,
Division One.

Oct. 7, 1988.

Kay S. Graff, Springfield, for appellant.

Lynn E. Heitman, Springfield, for respondent.

CROW, Presiding Judge.

Defendant Jane Church appeals from a judgment enforcing, by injunction, a non-compete covenant in an "Employment Agreement" between her and plaintiff Nail Boutique, Inc. The judgment bars defendant "from working in the area of the application of cosmetic processes to fingernails and toenails and/or the application of artificial nails within the area of Springfield, Missouri, specifically within fifty miles of the Greene County Courthouse, for a period of two years following the termination of her employment with the Plaintiff, that period to terminate on October 31, 1988." [1]

Defendant avers the trial court erred in (1) failing to consider the adequacy of consideration, as "the law requires adequate consideration to support a contract containing a covenant not to compete," and (2) finding that plaintiff had a "protectible interest," as plaintiff failed to show "protectible interests sufficient to support the injunction."

 Our review in this judge-tried case is governed by Rule 73.01(c) [2] and *Murphy v. Carron*, 536 S.W.2d 30, 32[1] (Mo. banc 1976). The judgment will be sustained unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law. In determining the sufficiency of the evidence we are mindful that the trial judge determined the credibility of the witnesses, and could accept or reject all, part or none of the testimony. *Mills v.*

---

1. The judgment granted defendant money damages against plaintiff on two of the four counts of defendant's amended counterclaim, but denied defendant relief on the other two counts. Defendant does not complain in this appeal about the denial of relief on the latter two counts, and plaintiff did not appeal from the segment of the judgment awarding defendant money damages.

2. Rule references are to Missouri Rules of Civil Procedure (19th ed. 1988).

*Cameron Mutual Insurance Co.*, 674 S.W. 2d 244, 246–47[1] (Mo.App.1984); *Cusumano v. Outdoors Today, Inc.*, 608 S.W.2d 136, 139[4] (Mo.App.1980). We consequently accept as true the evidence and permissible inferences which may be drawn favorable to the prevailing party, and disregard contradictory testimony. *Elliott v. West*, 665 S.W.2d 683, 689–90[5] (Mo.App.1984); *Ayers Plastics Co. v. Packaging Products Corp.*, 597 S.W.2d 177, 179 (Mo.App.1979). All fact issues upon which no specific findings were made by the trial court shall be considered as having been found in accordance with the result reached, and the judgment will be upheld on any reasonable theory supported by the evidence. Rule 73.-01(a)(2); *O'Bar v. Nickels*, 698 S.W.2d 950, 955[1] (Mo.App.1985); *Lohrmann v. Carter*, 657 S.W.2d 372, 376[1] (Mo.App.1983).

Viewed per the above principles, the evidence established that on May 15, 1984, plaintiff and defendant signed the agreement referred to in the first paragraph of this opinion. It provided, among other things, that plaintiff employed defendant as a cosmetician, that defendant would devote eight hours per day, five days per week, exclusively to plaintiff's business, that defendant would be compensated by receiving a percentage of her "gross take each week," and that employment "shall be from day to day and either [plaintiff] or [defendant] may terminate the employment relationship at will." The agreement further said:

"[Defendant] promises that during the term of . . . her employment with [plaintiff] and also after . . . her employment with [plaintiff] shall terminate, . . . she shall not engage, within two (2) years in the business of nail preparation and the application of cosmetic processes and devices to nails, either directly or indirectly as an employee of any entity or as a self-employed person within the City of Springfield, MO, or within an area inside a radius of fifty (50) miles from the Greene County Circuit Courthouse, in Springfield, Missouri, and further, that [defendant] shall not, at any time, divulge or make known any of the secrets, plans, methods, or processes by which said cosmetic work is conducted and carried on."

The business of plaintiff—a corporation—was described by its president, Sherry Wirth, as "[t]he application of sculptured nails, some manicures, pedicures, silk wraps, a process called lamplight." Mrs. Wirth explained that sculptured nails are "the same thing as artificial nails."

Mrs. Wirth recounted that defendant knew the "basic techniques" for applying sculptured nails when defendant went to work for plaintiff, but that Mrs. Wirth had to teach defendant to do such work in a manner acceptable to Mrs. Wirth, i.e., one that "separates the professionalism from anyone on the street." Mrs. Wirth recalled she monitored defendant's work several months before allowing defendant to work on clients without supervision.

In late September or early October of 1986, according to Mrs. Wirth, defendant said she wanted to reduce her days of work each week from five to four, as she needed to be home in the middle of the week. Soon thereafter two of plaintiff's other employees complained to Mrs. Wirth that there were too many employees doing nails at plaintiff's place of business, consequently their incomes had dropped.

Mrs. Wirth testified she and her husband—plaintiff's sole stockholders—decided to lay off one employee (not defendant) and also decided that inasmuch as defendant was then working four days a week, her days would be arranged so she could be on duty at the busiest times. The plan, said Mrs. Wirth, was for defendant to work Monday and Saturday, her regular days, and "Thursday and Friday from noon to eight or five to eight." Mrs. Wirth added that defendant was told she could choose to work those hours or be laid off.

The proposition, said Mrs. Wirth, was submitted to defendant on Friday, October 31, 1986. The following Monday, according to Mrs. Wirth, defendant said her fiancee was not in favor of her working those hours and she thought she ought to take a layoff. That was defendant's last day of work. Mrs. Wirth explained she expected

defendant to return to work before Christmas, as "business usually picks up considerably right before Christmas."

On December 4, 1986, defendant met with Mrs. Wirth. On that occasion, testified Mrs. Wirth, defendant said she wanted to "do nails" but did not want to come back to plaintiff's place of business. Mrs. Wirth reminded defendant of the non-compete clause, stating: "If you find an employer who would like to buy out your noncompetition clause in your contract, I would be willing to discuss this with them or, if you would like to buy it out yourself, then, you know, you can talk it over and get back with me."

Mrs. Wirth never heard from defendant again, but in early February, 1987, learned that defendant was working as a manicurist and nail artist at a competing salon within the area covered by the non-compete clause.

Plaintiff immediately commenced this action. A temporary restraining order was promptly issued and remained in effect until replaced by a preliminary injunction, which prevailed until entry of the judgment from which this appeal is taken.

■ Defendant's first assignment of error maintains the trial court wrongly failed to consider the adequacy of consideration. The point is based on the following excerpt from a memorandum prepared by the trial court after trial and prior to entry of judgment: "An enforceable contract exists between the parties which is supported by some consideration. The adequacy of consideration may be questionable but is not considered herein."

Defendant insists the only right granted her in the parties' agreement was the right to leave plaintiff's employ at will, a right, according to defendant, that "was an empty one in view of the terms of the covenant not to compete." Defendant asserts that all rights and benefits flowed to plaintiff, "resulting in a unilateral contract lacking in consideration sufficient to support a covenant not to compete."

Defendant cites two Missouri cases in regard to her first point: *USA Chem, Inc. v. Lewis*, 557 S.W.2d 15 (Mo.App.1977), and *Reed, Roberts Associates, Inc. v. Bailenson*, 537 S.W.2d 238 (Mo.App.1976).

In *USA Chem* the employee was hired as a sales representative on a commission basis, was trained by the employer in the methods of selling its products, and became acquainted with the customers and business methods of the employer. The employment contract, which was terminable at any time by either party without notice, contained a non-compete clause comparable to the one in the instant case as to time and area. The employee in *USA Chem* remained with the employer seven years, receiving the commissions called for by the contract. He then resigned and began selling products similar to and in competition with his former employer. The latter sought enforcement of the non-compete clause. The employee argued, among other things, that the non-compete clause was unenforceable against him because the contract lacked mutuality.

Rejecting the argument, the appellate court explained that mutuality of obligation is often confused with consideration; that consideration is essential but mutuality of obligation is not, unless want of mutuality would leave one party without a valid or available consideration for his promise. 557 S.W.2d at 24. The appellate court held there was good and sufficient consideration flowing to the employee, i.e., the full-time employment tendered him by the employer, the customer lists and demonstration kits furnished, the specialized training and techniques of selling given, and the earnings paid. *Id.* Consequently, the contract was not lacking in mutuality of obligation. *Id.* As far as mutuality of remedy, as the employee had received the benefits of the contract for seven years, the positions of the parties had changed so as to give the employer an equity arising out of past performance to ensure that the employee carry out his obligations under the contract. *Id.*

*Reed*, 537 S.W.2d 238, involved a three-year non-compete covenant in an employment contract terminable by either party on one week's notice without cause. After

more than six years' employment, the employee resigned, then promptly went to work for a competitor of his former employer. A decree enforcing the non-compete covenant was entered by the trial court. On appeal the employee contended, among other things, that the non-compete clause was void for lack of consideration. The appellate court disagreed, holding that continuance by the former employer of the employment where continuance was not required supplied adequate consideration. *Id.* at 241.

We find no support for defendant's first point in either *USA Chem* or *Reed*. Defendant insists, however, that her case is different from those in that she was "cut back as to hours and forced out," while in those cases the employees voluntarily resigned. Defendant bases such assertion on her testimony that the choice offered her by plaintiff on October 31, 1986, was to work two days a week—Monday and Saturday—or be laid off.

As noted earlier, the trial court was not required to believe defendant's testimony. The trial court made no finding as to whose version of the conversation of October 31, 1986, was true, defendant's or Mrs. Wirth's. If the latter's version was correct defendant voluntarily left her employment, as did the employees in *USA Chem* and *Reed*.

We observed at the outset that all fact issues upon which no specific findings were made by the trial court are to be considered as having been found in accordance with the result reached, and the judgment must be affirmed under any reasonable theory supported by the evidence. *Snowden v. Gaynor*, 710 S.W.2d 481, 486[3] (Mo.App. 1986); *Montrose Savings Bank v. Landers*, 675 S.W.2d 668, 669[2] (Mo.App.1984). Consequently, we shall proceed on the premise that defendant elected to leave plaintiff's employ voluntarily rather than accept changes in her work schedule—a thesis amply supported by the evidence—and we need not ponder what the result should have been had plaintiff discharged defendant without cause.

Defendant was admittedly employed by plaintiff some two and a half years during which she received training in the application of sculptured nails, became acquainted with plaintiff's customers, and was paid the compensation called for in the employment agreement. Under *USA Chem* and *Reed*, plaintiff received adequate consideration to support the non-compete covenant in the employment agreement. *Accord: Computer Sales International, Inc. v. Collins*, 723 S.W.2d 450, 451–52[2] (Mo.App.1986). Defendant's first point is controlled by those three cases, and is consequently denied.

■ Defendant's second point avers plaintiff failed to show protectible interests sufficient to support injunctive relief. The thrust of this point is that plaintiff's evidence did not demonstrate any trade secrets or secret processes in connection with its business.

Plaintiff, in its brief, does not seek to justify injunctive relief on the basis of trade secrets or confidential processes. Plaintiff insists, however, that it had "a legally protectible interest in its stock of customers."

Plaintiff's evidence pertinent to defendant's second point established that plaintiff's employees maintain lists of customers, that when defendant began working for plaintiff she was supplied a list of 100 to 300 individuals who had patronized plaintiff's business in the past, that on defendant's last day at plaintiff's salon she was observed making a list of customers she had serviced during her tenure there, and that after defendant went to work at the competing salon she serviced customers she had formerly serviced at plaintiff's salon.

Defendant's second point is ruled by *Osage Glass, Inc. v. Donovan*, 693 S.W.2d 71 (Mo. banc 1985). There the employee was hired as an installer by an employer whose business was installation of automobile glass. The employment contract provided, among other things, that the employee would not, for three years after termination of employment for any reason, associate himself with or engage in any busi-

ness in competition with the employer in the State of Missouri. The employee ultimately became manager of the employer's operation in Kansas City where he had contact with the employer's customers, consisting of insurance companies, fleet operators, independent body shops, automobile dealerships, and specialty vehicle manufacturers. The employee brought in new customers for the employer. After some two and a half years of employment, the employee resigned and accepted employment with a competitor. The former employer sought an injunction enforcing the noncompete covenant. The trial court denied relief.

The Supreme Court of Missouri reversed, stating:

"An express agreement not to compete may be enforced as to employees having substantial customer contacts. It is not necessary to show that there is a secret customer list." *Id.* at 74[2] (footnote omitted).

The Supreme Court held that the former employer had a protectible interest in its customer contacts, *id.* at 74, and explained:

"The purpose of the restriction is to keep the covenanting employee out of a situation in which he might be able to make use of contacts with customers to his former employer's disadvantage. If the covenant is lawful and the opportunity for influencing customers exists, enforcement is appropriate." *Id.* at 75[3].

Defendant in the instant case cites *Ibur & Associates Adjustment Co., Inc. v. Walsh*, 595 S.W.2d 33 (Mo.App.1980), but the Supreme Court in *Osage Glass* distinguished *Ibur* on the ground that there was no showing that the employee was in a position to divert business from his former employer to his new one. *Osage Glass*, 693 S.W.2d at 74–75.

In the instant case plaintiff's evidence demonstrated that defendant, after going to work at the competing salon, (a) informed customers she had formerly serviced at plaintiff's salon of her new location, and (b) serviced customers she had once serviced at plaintiff's salon.

On the record before us, defendant's second point falls squarely under the holding of *Osage Glass*. Defendant's second point is denied and the judgment is affirmed.

HOLSTEIN, C.J., and PREWITT, J., concur.

GREENE, J., not participating.