# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-1981

_____

Safety-Kleen Systems, Inc.,       *
     *

     Plaintiff - Appellee,      *
     *    Appeal from the United States

v.      *    District Court for the
     *    Eastern District of Missouri.

Kevin Hennkens,      *
     *

     Defendant - Appellant.      *

_____

Submitted: June 13, 2002

Filed: August 29, 2002   Corrected 9/3/02

_____

Before WOLLMAN, RICHARD S. ARNOLD, and LOKEN, Circuit Judges.

_____

LOKEN, Circuit Judge.

After Safety-Kleen Systems, Inc. fired Kevin Hennkens, a customer service representative, he began soliciting customers in his former trade area for a Safety-Kleen competitor. Safety-Kleen filed this diversity action, seeking to enforce a one-year restrictive covenant in Hennkens's employment agreement with Safety-Kleen. After an evidentiary hearing, the district court[1] granted Safety-Kleen's motion for a preliminary injunction. Hennkens appeals, arguing that Safety-Kleen failed to prove

_____

[1]The HONORABLE E. RICHARD WEBBER, United States District Judge for the Eastern District of Missouri.

irreparable injury and the likelihood of success on the merits, and that the injunction is overly broad. We affirm.

## I. Background.

Safety-Kleen is a national waste management company that provides products such as solvents and parts cleaners and waste collection and disposal services to its industrial and commercial customers. For manufacturing customers in particular, these products and services are customized to fit each customer's particular needs. Safety-Kleen's sales and service representatives are its primary customer contacts. The Safety-Kleen representatives develop a personal relationship with customers and learn each customer's specific waste management needs. These relationships are crucial to Safety-Kleen because seventy percent of its new business comes from existing customers.

On January 3, 2000, Hennkens began work as a Vacuum Sales and Service Representative at Safety-Kleen's branch in Caseyville, Illinois. Hennkens signed an Employment Agreement that included the following provisions:

> 1. <u>Customer Relationships</u>: Employee acknowledges that the Company's business is largely a service business which is dependent entirely upon the satisfaction existing between the customer and the Company . . . . The Employee recognizes that the only normal contact between the individual customer and Safety-Kleen is the Employee himself, and that the Employee represents Safety-Kleen and its associated goodwill to such customers.

> \* \* \* \* \*

> 7. <u>Competitive Activities After Termination of Employment</u>: Employee agrees that for a period of one (1) year from the date on which his employment terminates, for whatever reason, he will not solicit or divert,

or attempt to solicit or divert any of the customers, employees or patronage of the Company within the geographic area which is set forth in Addendum A . . . and he will not for himself or on behalf of any other person, firm or corporation engage directly or indirectly in any activity competitive with the business carried on by the Company within the Geographic Area.

The Geographic Area was defined as the areas served by Safety-Kleen's branches in Caseyville and in St. Charles, Missouri.

While working at the Caseyville branch, Hennkens served a trade area consisting of eight Illinois counties and the City of St. Louis. His duties included driving a tanker truck to collect customer wastes and soliciting new nonhazardous waste disposal business. In March of 2000, Hennkens transferred to the St. Charles branch, where he became an Industrial Sales and Service Representative. In this position, he solicited sales and provided waste disposal and parts cleaning services to customers engaged in manufacturing. His primary territory consisted of four Missouri counties, including part of St. Louis county but not the City of St. Louis.

Safety-Kleen reorganized the St. Charles branch in August of 2001, separating the sales and service responsibilities. Hennkens was offered a position as "Customer Service Representative," responsible for providing services to the same customers in the same trade area. He accepted the position and signed a new Non-Competition and Non-Disclosure Agreement on August 15, 2001. This Agreement contained a more elaborate non-compete provision than the above-quoted portions of the first agreement, but for our purposes the restrictions were the same except Hennkens was prohibited for one year from working for a competitor "within any county in any state in which Employee provides services for the Company during his employment."

Safety-Kleen fired Hennkens for dishonesty in responding to a customer complaint the day after he signed the second non-compete agreement. Following his

dismissal, he went to work for Heritage-Crystal Clean ("Crystal Clean"), a major competitor of Safety-Kleen. In a pre-hearing affidavit, Hennkens admitted that the two companies sell "essentially identical" products and services; that he calls on customers for Crystal Clean in the areas served by Safety-Kleen's St. Charles and Caseyville branches, including some customers he called on while employed by Safety-Kleen; and that he has succeeded in obtaining some business from at least three former Safety-Kleen customers. Testifying at the evidentiary hearing, Hennkens admitted sending Crystal Clean sales literature to customers with whom he had contact while at Safety-Kleen and acknowledged that the confidential sales and customer information he acquired while working at Safety-Kleen "would give a person a competitive advantage as a salesperson in the same industry." (However, there is no evidence that Hennkens misappropriated any customer lists, price lists, or other confidential Safety-Kleen documents when he left.)

Safety-Kleen discovered that Hennkens was working for a competitor in October 2001 and filed this action on March 19, 2002. The district court promptly held a preliminary injunction hearing. On April 3, 2002, the court issued its opinion and order granting Safety-Kleen the following injunctive relief:

> Mr. Kevin Hennkens is hereby prohibited from (1) demonstrating, servicing, or selling products or services that are competitive with Safety-Kleen products or services; (2) soliciting or accepting business similar to any aspect of Safety-Kleen's business from any person or firm who was a customer of Safety-Kleen with whom Mr. Hennkens had contact with while employed at Safety-Kleen; (3) soliciting, enticing, or inducing any person or firm, or directing any other person to solicit, entice, or induce any person or firm that was a Safety-Kleen customer with whom Mr. Hennkens had contact with while employed at Safety-Kleen; and (4) using, disclosing, or permitting any unauthorized person access to any confidential information belonging to Safety-Kleen of which Mr. Hennkens acquired knowledge during his employment with Safety-Kleen. Such prohibitions are effective within Clinton, Greene,

Jersey Macoupin, Madison, Monroe, Pike, and St. Clair counties in Illinois; St. Charles, Warren, Lincoln, and St. Louis counties in Missouri; and St. Louis city, Missouri until August 16, 2002, or a resolution of this matter, whichever occurs first. In addition, Mr, Hennkens is ordered to deliver to Safety-Kleen any memorandum, notes, records, drawings, manuals, or other documents concerning confidential information or trade secrets that are currently in his possession.

## II. Discussion

**A. Standard of Review.** "A district court has broad discretion when ruling on requests for preliminary injunctions, and we will reverse only for clearly erroneous factual determinations, an error of law, or an abuse of that discretion." United Indus. Corp. v. The Clorox Co., 140 F.3d 1175, 1179 (8th Cir. 1998). "Whether a preliminary injunction should issue involves consideration of (1) the threat of irreparable harm to the movant; (2) the state of balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest." Dataphase Sys., Inc. v. C L Sys., Inc., 640 F.2d 109, 113 (8th Cir. 1981) (en banc).

**B. Irreparable Harm.** Hennkens first argues that the district court abused its discretion when it concluded that Safety-Kleen would suffer irreparable harm absent injunctive relief. Because this is a diversity case, we look to Missouri law for the proper irreparable injury standard. See Overholt Crop Ins. Serv. Co. v. Travis, 941 F.2d 1361, 1371 (8th Cir. 1991) (no abuse of discretion to follow state law in inferring irreparable injury from breach of a restrictive covenant); JAK Prods., Inc. v. Wiza, 986 F.2d 1080, 1084 (7th Cir. 1993) (applying state law that irreparable injury occurs "[w]henever an employee uses his experience gained from an employer in violation of a reasonable covenant not to compete").

The district court found that Hennkens has actively solicited Safety-Kleen clients in the trade areas he worked for Safety-Kleen, that he has had success attracting some of his former Safety-Kleen customers to Crystal Clean, and that "there is a real threat that his continued efforts will result in additional Safety-Kleen customers switching to Heritage-Crystal Clean." Hennkens argues that Safety-Kleen has suffered only "a small amount of lost sales," and that this harm does not entitle Safety-Kleen to an injunction prohibiting him from soliciting "new, unaffiliated customers." This contention is contrary to Missouri law.

> The purpose of the restriction is to keep the covenanting employee out of a situation in which he might be able to make use of contacts with customers to his former employer's disadvantage. If the covenant is lawful and the opportunity for influencing customers exists, enforcement is appropriate.
>
> Nor is it necessary for the employer to show that actual damage has occurred, in order to obtain an injunction. . . . The significant circumstance is potential for damage.

Osage Glass, Inc. v. Donovan, 693 S.W.2d 71, 75 (Mo. 1985) (citation omitted). In addition, Missouri courts will enforce a reasonable covenant that prohibits a former employee from competing generally in his former trade area, not just from soliciting his former customers. See Washington County Mem'l Hosp. v. Sidebottom, 7 S.W.3d 542, 543-44 (Mo. App. 1999).

Relying on Hubbard Feeds, Inc. v. Animal Feed Supplement, Inc., 182 F.3d 598, 603 (8th Cir. 1999), Hennkens further argues that Safety-Kleen's seven-month delay in bringing suit following its discovery that Hennkens was competing in his former trade areas precludes a finding of irreparable harm. This contention is without merit. In Hubbard Feeds, we held that a district court did not abuse its discretion when it denied a preliminary injunction in part because plaintiff's *nine-year* delay in

asserting unfair competition claims "belies any claim of irreparable injury pending trial." The issue is whether "the length of delay was unreasonable," an issue that turns on the facts of each case. Whitfield v. Anheuser-Busch, Inc., 820 F.2d 243, 245 (8th Cir. 1987). Here, it took Safety-Kleen *seven months* to learn of Hennkens's competitive activity, marshal its case for a preliminary injunction, and file this action prepared for an immediate preliminary injunction hearing. The district court did not abuse its discretion in concluding that Safety-Kleen did not unduly delay and made an adequate showing of irreparable injury.[2]

**C. Likelihood of Success on the Merits.** Hennkens next argues that the district court abused its discretion in concluding that Safety-Kleen made an adequate showing of likelihood of success on the merits. This issue requires a review of Missouri law pertaining to restrictive covenants. Though agreements limiting a former employee's freedom to compete are valid in Missouri, the Missouri courts "carefully restrict[]" the enforcement of such agreements because they "restrain commerce and limit the employee's freedom to pursue his or her trade." Donovan, 693 S.W.2d at 73-74. Thus, a restrictive covenant is enforceable under Missouri law only *to the extent that* it is reasonable in duration and geographic scope and protects -

> certain narrowly defined and well recognized interests against possible appropriation by a former employee. These protectable interests are limited to trade secrets and customer contacts, the latter being essentially the influence an employee acquires over his employer's customers through personal contact.

Continental Research Corp. v. Scholz, 595 S.W.2d 396, 400 (Mo. App. 1980).

---

[2]Hennkens argues that the seven-month delay precludes a finding of irreparable injury because only five months remained of the restrictive covenant's one-year term. However, the first covenant provides that "the one-year period referred to above shall be extended to include a period of time equal to the period of time during which Employee engaged in conduct constituting a breach of this provision."

Hennkens argues that Safety-Kleen did not establish the requisite protectable interest because his customer contacts were not of sufficient quality, frequency, and duration to justify enjoining him from pursuing his career with a Safety-Kleen competitor. We disagree. Safety-Kleen presented evidence tending to show that its sales and service representatives are its principal customer contacts, that contacts with customers and knowledge of customers' specific needs are important to obtaining and keeping waste management business, and that Hennkens developed hundreds of such contacts while employed by Safety-Kleen. This showing was consistent with the acknowledgment by Hennkens in his first employment agreement that his customer relationships would be significant to Safety-Kleen. The Missouri courts have frequently held that such substantial and individualized customer contacts are a protectable interest warranting injunctive relief enforcing a covenant not to compete. See Donovan, 693 S.W.2d at 74; Sidebottom, 7 S.W.3d at 545; Scholz, 595 S.W.2d at 401; Renwood Food Prods., Inc. v. Schaefer, 223 S.W.2d 144, 152 (Mo. App. 1949). The district court did not abuse its discretion in concluding that Safety-Kleen established a likelihood of success on the merits of this issue.

Hennkens further argues that Safety-Kleen failed to show likelihood of success on the merits because he was fired without just cause the day after he signed the second restrictive covenant, and therefore that agreement was without consideration and tainted by Safety-Kleen's unclean hands. The short answer to this contention is that it does not affect the enforceability of the first covenant not to compete, which expressly applied if Hennkens's employment was terminated "for whatever reason."[3] To the extent the second covenant is relevant at this stage of the proceedings, the district court did not abuse its discretion in concluding that Safety-Kleen had

[3]Under Missouri law, an at-will employee's continued employment after signing a covenant not to compete is sufficient consideration for the covenant. See Computer Sales Inter'l, Inc. v. Collins, 723 S.W.2d 450, 452 (Mo. App. 1986).

sufficiently established a breach of contract warranting preliminary injunctive relief and in deferring the issue of the second covenant's validity for trial on the merits.

**D. Scope of the Injunction.**  Finally, Hennkens argues that the injunction should be narrowed so that it excludes the Illinois counties and the City of St. Louis, which he worked while assigned to Safety-Kleen's Caseyville branch but not after he transferred to the St. Charles branch.  By signing the first employment agreement, Hennkens expressly agreed he would not compete with Safety Kleen for one year after termination in *all* areas served by the St. Charles and Caseyville branches.  In the second agreement, Hennskens agreed not to compete *anywhere* in Missouri and Illinois.  The district court granted a preliminary injunction enforcing the one-year covenants only in those areas that Hennkens in fact served during his two-and-one-half-year employment with Safety-Kleen.  The court did not abuse its discretion in concluding that an injunction limited in this fashion was consistent with the principle that restrictive covenants are enforceable under Missouri law to the extent they impose reasonable restraints on a former employee's right to compete.

The order of the district court granting a preliminary injunction is affirmed.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.

-9-